**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| EMAD SAYED MASUMI, ) | Case No. 11-16503-BFK |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| _____ ) | |
| AUTOMOTIVE FINANCE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adversary No. _____ |
| ) | |
| EMAD SAYED MASUMI, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY
OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6)**

Automotive Finance Corporation ("AFC"), by counsel and pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6), and Rule 7001 of the Federal Rules of Bankruptcy Procedure, for its Complaint against Emad Sayed Masumi ("Masumi"), states as follows:

**I. PARTIES**

1. On September 2, 2011 (the "Petition Date"), Masumi filed a voluntary petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Case").

2. The deadline within which to timely file complaints to determine the dischargeability of debts in the Bankruptcy Case is December 12, 2011, and this complaint is therefore timely.

3. Masumi is an individual and, upon information and belief, a resident of Virginia.

Brian P. Waagner (VSB No. 37202)
HUSCH BLACKWELL LLP
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Telephone: 202-378-2300
*Counsel for Plaintiff Automotive Finance Corporation*

4. AFC is an Indiana corporation, and is a creditor of Masumi's.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

6. Venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1409.

7. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2).

## III. FACTUAL ALLEGATIONS

### A. The Demand Promissory Note and Security Agreement

8. At all times relevant herein, Masumi was CEO of Icon Motors, Inc. ("Icon Motors"), a Virginia corporation.

9. On July 25, 2006, Icon Motors executed a Dealer Application to obtain floor plan financing from AFC. Masumi executed the Dealer Application as CEO of Icon Motors. A true and accurate copy of the Dealer Application is attached as **Exhibit 1**.

10. On or about July 25, 2006, Icon Motors executed a Demand Promissory Note and Security Agreement, pursuant to which Icon Motors promised to pay AFC Four Hundred Thousand Dollars ($400,000.00), or such greater or lesser principal amount as may be advanced by AFC pursuant thereto, together with interest.

11. Masumi executed the Demand Note and Security Agreement as CEO of Icon Motors. A true and accurate copy of the Demand Promissory Note and Security Agreement is attached as **Exhibit 2**.

12. Under the terms of the Demand Promissory Note and Security Agreement and to secure Icon Motors's present and future obligations to AFC under that note and any other

instrument, guaranty, or other document, Icon Motors granted AFC a security interest in substantially all of its assets, including inventory, then owned or thereafter acquired.

13. Under the terms of the Demand Promissory Note and Security Agreement and to secure Icon Motors's present and future obligations to AFC under that note and any other instrument, guaranty, or other document, Icon Motors also granted AFC a purchase money security interest in all vehicles, parts, and equipment financed by AFC thereunder.

14. On July 25, 2006, Masumi executed an Unconditional and Continuing Guaranty pursuant to which he guaranteed the full and prompt payment of all obligations of Icon Motors to AFC under the Demand Promissory Note and Security Agreement and any other agreement, as amended, supplemented, or modified. A true and accurate copy of the Unconditional and Continuing Guaranty is attached to the Demand Promissory Note and Security Agreement (**Exhibit 2**) as Exhibit C.

15. On or about May 27, 2008 and July 2, 2008, Icon Motors signed two Aggregate Advance Limit Amendments (the "Amendments"), increasing the total cash and/or credit available to Icon Motors to $650,000.00 and reaffirming Masumi's personal guaranty under the Note. A true and accurate copy of the Amendments is attached as **Exhibit 3**.

16. AFC's security interest in the assets of Icon Motors was properly perfected and continued through the appropriate UCC filings made with the Commonwealth of Virginia State Corporation Commission. True and accurate copies of these UCC filings are attached as **Exhibit 4**.

17. Prior to the Petition Date, Icon Motors requested that AFC advance it money and/or extend it credit under the Note, and AFC in fact advanced money to Icon Motors and/or extended Icon Motors credit under the Note to purchase vehicles for resale.

18. Prior to the Petition Date, Icon Motors did not pay all amounts due and owing to AFC in accordance with the terms of the Note, and Icon Motors was and is in default thereunder.

### B. The Secured Vehicles

19. Pursuant to the Note, Icon Motors represented to AFC that it would hold funds derived from the sale of vehicles purchased by Icon Motors financed by AFC under the Note in trust for the benefit of AFC (the "Trust Funds"), and that Icon Motors would pay the Trust Funds to AFC.

20. Each time Icon Motors requested that AFC advance it money and/or extend it credit under the Note to finance the purchase of a vehicle, Icon Motors represented to AFC that it would pay the Trust Funds derived from the sale of such vehicle to AFC.

21. Based upon those representations, AFC advanced Icon Motors money and/or extended Icon Motors credit under the Note to purchase vehicles for resale.

22. Prior to the Petition Date, Icon Motors sold certain vehicles purchased by Icon Motors and financed by AFC under the Note (the "Secured Vehicles"). A listing of the Secured Vehicles is attached to AFC's Complaint as **Exhibit 5**.

23. The Secured Vehicles were inventory of Icon Motors within the meaning of Section 102(a)(48) of Revised Article 9 of the Uniform Commercial Code.

24. AFC had a security interest in the Secured Vehicles.

25. AFC's security interest in the Secured Vehicles was first priority.

26. Icon Motors knew that AFC had a security interest in the Secured Vehicles.

27. Masumi knew that AFC had a security interest in the Secured Vehicles.

28. AFC properly perfected its security interest in the Secured Vehicles.

29. Icon Motors knew that AFC had a properly perfected security interest in the Secured Vehicles.

30. Masumi knew that AFC had a properly perfected security interest in the Secured Vehicles.

31. The Trust Funds were proceeds of the Secured Vehicles.

32. AFC had a security interest in the Trust Funds.

33. AFC's security interest in the Trust Funds was first priority.

34. Icon Motors knew that AFC had a security interest in the Trust Funds.

35. Masumi knew that AFC had a security interest in the Trust Funds.

36. AFC properly perfected its security interest in the Trust Funds.

37. Icon Motors knew that AFC had a properly perfected security interest in the Trust Funds.

38. Masumi knew that AFC had a properly perfected security interest in the Trust Funds.

39. Icon Motors knew that it was required to pay the Trust Funds to AFC.

40. Masumi knew that Icon Motors was required to pay the Trust Funds to AFC.

41. Icon Motors knew that it did not have the authority or the consent of AFC to sell, transfer, or otherwise dispose of the Secured Vehicles and not pay AFC the Trust Funds.

42. Masumi knew that Icon Motors did not have the authority or the consent of AFC to sell, transfer, or otherwise dispose of the Secured Vehicles and not pay AFC the Trust Funds.

43. Icon Motors had the ability to pay the Trust Funds to AFC.

44. Prior to the Petition Date, Icon Motors, through or at the direction of Masumi, intentionally did not pay AFC the Trust Funds despite knowledge that injury to AFC was substantially certain to occur as a result.

45. Masumi knew that injury to AFC was substantially certain to occur as a result of Icon Motors' failure to pay AFC the Trust Funds.

46. By not paying AFC the Trust Funds, Icon Motors, through or at the direction of Masumi, knowingly forced AFC to take substantially less than what it was owed.

47. By not paying AFC the Trust Funds, Masumi knowingly forced AFC to take substantially less than what it was owed.

48. Upon information and belief, Icon Motors, through or at the direction of Masumi, used the Trust Funds to pay creditors other than AFC.

49. The amount due and owing from Masumi to AFC with respect to the Secured Vehicles is approximately $766,171.02.

50. Masumi was engaged in the active, substantial, and continuing personal participation in the management and day to day operations of Icon Motors.

51. The acts taken by Icon Motors described above were taken at the direction of Masumi as an officer of Icon Motors.

52. Masumi is personally liable for the representations, acts, and omissions of material fact made by Icon Motors to AFC that are set forth above.

53. Masumi is personally liable for the representations, acts, and omissions of material fact he made to AFC that are set forth above.

### C.  The State Court Action

54. Prior to the Petition Date, AFC commenced a civil action against Icon Motors and Masumi in the Marion County, Indiana Superior Court under Cause No. 49D04-0904-CC-020185 (the "State Court Action").

55. In the State Court Action, AFC sought damages from Icon Motors and Masumi for breach of contract, deception and fraud, and false pretenses, false representations, or actual fraud based in part on the facts set forth above.

56. On January 15, 2010, the Marion County Superior Court entered Default Judgment in favor of AFC and against Icon Motors and Masumi.  A true and accurate copy of the Default Judgment order (the "Default Judgment") is attached hereto as **Exhibit 6**.

57. In the Default Judgment, the Court entered judgment in favor of AFC and against Icon Motors and Masumi in the total amount of $1,519,045.74.

### D.  Basis for Relief

58. Icon Motors, through or at the direction of Masumi, obtained money, property, and/or an extension of credit from AFC by false pretenses, false representations, and/or actual fraud.

59. At the time Icon Motors made the representations or omissions of material fact to AFC that are set forth above, Icon Motors knew they were false.

60. At the time Icon Motors made the representations or omissions of material fact to AFC that are set forth above, Masumi knew they were false.

61. Icon Motors made the representations or omissions of material fact to AFC that are set forth above through or at the direction of Masumi.

62. Icon Motors made the representations or omissions of material fact to AFC that are set forth above with the intention and purpose of deceiving AFC.

63. AFC relied on the representations or omissions of material fact made by Icon Motors to AFC that are set forth above.

64. AFC's reliance on the representations or omissions of material fact made by Icon Motors to AFC that are set forth above was justified.

65. As a proximate result of the representations or omissions of material fact made by Icon Motors to AFC that are set forth above, AFC has sustained loss and has been damaged.

66. By executing the Note, AFC and Icon Motors intended to create an express or technical trust with respect to the Trust Funds.

67. Pursuant to the Note, Icon Motors and Masumi were trustees and AFC was the beneficiary with respect to the Trust Funds.

68. Icon Motors expressly agreed that it would hold the Trust Funds in trust for the benefit of AFC.

69. Masumi expressly agreed that he would hold the Trust Funds in trust for the benefit of AFC.

70. Icon Motors was clearly put on notice that it was undertaking the special responsibilities of a trustee with respect to the Trust Funds.

71. Masumi was clearly put on notice that he was undertaking the special responsibilities of a trustee with respect to the Trust Funds.

72. There was a fiduciary relationship between Icon Motors and AFC with respect to the Trust Funds.

73. There was a fiduciary relationship between Masumi and AFC with respect to the Trust Funds.

74. AFC was the beneficial owner of the Trust Funds.

75. Icon Motors did not have unrestricted use of the Trust Funds.

76. Icon Motors was not entitled to treat the Trust Funds as its own.

77. Masumi did not have unrestricted use of the Trust Funds.

78. Masumi was not entitled to treat the Trust Funds as his own.

79. While acting in a fiduciary capacity, Icon Motors, through or at the direction of Masumi, misappropriated the Trust Funds.

80. While acting in a fiduciary capacity, Masumi misappropriated the Trust Funds.

81. While acting in a fiduciary capacity, Icon Motors, through or at the direction of Masumi, failed to properly account for the Trust Funds.

82. While acting in a fiduciary capacity, Masumi failed to properly account for the Trust Funds.

83. Upon information and belief, Icon Motors, through or at the direction of Masumi, appropriated the Trust Funds for its own use or benefit.

84. Upon information and belief, Masumi appropriated the Trust Funds for his own use or benefit.

85. Upon information and belief, Icon Motors, through or at the direction of Masumi, appropriated the Trust Funds with fraudulent intent.

86. Upon information and belief, Masumi appropriated the Trust Funds with fraudulent intent.

87. Upon information and belief, Icon Motors, through or at the direction of Masumi, converted the Trust Funds.

88. Upon information and belief, Masumi converted the Trust Funds.

89. The representations, acts, and omissions of material fact made by Icon Motors to AFC that are set forth above were wrongful.

90. The representations, acts, and omissions of material fact made by Icon Motors to AFC that are set forth above were done intentionally.

91. The representations, acts, and omissions of material fact made by Icon Motors to AFC that are set forth above necessarily caused injury to AFC.

92. The representations, acts, and omissions of material fact made by Icon Motors to AFC that are set forth above were done without just cause or excuse.

93. At all times relevant herein, Masumi was engaged in the active, substantial, and continuing personal participation in the management and day to day operations of Icon Motors.

94. As an officer of Icon Motors, Masumi is personally liable for the representations, acts, and omissions of material fact made by Icon Motors to AFC that are set forth above.

95. Masumi is personally liable for the representations, acts, and omissions of material fact he made to AFC that are set forth above.

96. The Default Judgment is a judgment based, in part, on embezzlement, defalcation while acting in a fiduciary capacity, fraud, and/or injury to property.

97. The Default Judgment is a judgment against Masumi on the merits in the State Court Action for purposes of res judicata.

98. The Default Judgment is entitled to collateral estoppel effect in this adversary proceeding.

99. Pursuant to the Note, AFC is entitled to attorneys' fees, costs, and expenses incurred collecting and enforcing the obligations under the Note, including the fees and expenses incurred in this proceeding.

100. AFC has been required to hire attorneys to collect and enforce the obligations under the Note, and to commence and pursue this proceeding.

101. AFC has incurred attorneys' fees, costs, and expenses collecting and enforcing the obligations under the Note, including the fees and expenses incurred in this proceeding.

102. Pursuant to the Note, AFC is entitled to attorneys' fees, costs, and expenses incurred collecting and enforcing the obligations under the Note, including the fees and expenses incurred in this proceeding.

103. AFC has been required to hire attorneys to collect and enforce the obligations under the Note, and to commence and pursue this proceeding.

### COUNT I: 11 U.S.C. § 523(a)(2)(A)

104. AFC repeats and realleges paragraphs 1–103 above as paragraphs 1–103 of this Count I.

105. The debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extension of credit Icon Motors obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Secured Vehicles is a nondischargeable debt of Masumi's pursuant to 11 U.S.C. § 523(a)(2)(A).

106. The debt, including attorneys' fees, costs, and expenses, arising from the Default Judgment is a nondischargeable debt of Masumi pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, AFC prays for: (a) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extensions of credit Icon

Motors obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Secured Vehicles is a nondischargeable debt of Masumi's pursuant to 11 U.S.C. § 523(a)(2)(A); (b) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the Default Judgment is a nondischargeable debt of Masumi pursuant to 11 U.S.C. § 523(a)(2)(A); and (c) all other and further relief the Court deems just and proper.

## COUNT II: 11 U.S.C. § 523(a)(4)

107.    AFC repeats and realleges paragraphs 1–106 above as paragraphs 1–106 of this Count II.

108.    The debt, including attorneys' fees, costs, and expenses, arising from the failure to pay the Trust Funds to AFC is a result of embezzlement, and is a nondischargeable debt of Masumi's pursuant to 11 U.S.C. § 523(a)(4).

109.    The debt, including attorneys' fees, costs, and expenses, arising from the failure to pay the Trust Funds to AFC is a result of defalcation while acting in a fiduciary capacity, and is a nondischargeable debt of Masumi's pursuant to 11 U.S.C. § 523(a)(4).

110.    The debt, including attorneys' fees, costs, and expenses, arising from the Default Judgment is a nondischargeable debt of Masumi pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, AFC prays for: (a) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the failure to pay the Trust Funds to AFC is a nondischargeable debt of Masumi's pursuant to 11 U.S.C. § 523(a)(4); (b) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the Default Judgment is a nondischargeable debt of Masumi pursuant to 11 U.S.C. § 523(a)(4); and (c) all other and further relief the Court deems just and proper.

## **COUNT III: 11 U.S.C. § 523(a)(6)**

111. AFC repeats and realleges paragraphs 1–110 above as paragraphs 1–110 of this Count III.

112. The debt, including attorneys' fees, costs, and expenses, arising from the willful and malicious injury to the Secured Vehicles and AFC's interest therein is a nondischargeable debt of Masumi's pursuant to 11 U.S.C. § 523(a)(6).

113. The debt, including attorneys' fees, costs, and expenses, arising from the willful and malicious injury to the Trust Funds and AFC's interest therein is a nondischargeable debt of Masumi's pursuant to 11 U.S.C. § 523(a)(6).

114. The debt, including attorneys' fees, costs, and expenses, arising from the Default Judgment is a nondischargeable debt of Masumi pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, AFC prays for: (a) a determination that the debt, including attorneys' fees, costs, and expenses, arising from the willful and malicious injury to the Trust Funds is a nondischargeable debt of Masumi for which he is liable pursuant to 11 U.S.C. § 523(a)(6); (b) a determination that the debt, including attorneys' fees, costs, and expenses, arising willful and malicious injury to the Secured Vehicles and AFC's interest therein is a nondischargeable debt of Masumi's pursuant to 11 U.S.C. § 523(a)(6); (c) a determination that that debt arising from the Default Judgment is a nondischargeable debt of Masumi pursuant to 11 U.S.C. § 523(a)(6); and (d) all other and further relief the Court deems just and proper.

**DATED** this 12${}^{th}$ day of December 2011.

        Respectfully submitted,

        /s/ Brian P. Waagner
        Brian P. Waagner (VSB No. 37202)
        HUSCH BLACKWELL LLP
        750 17${}^{th}$ Street, NW, Suite 900
        Washington, D.C. 20006
        Telephone: 202-378-2300
        Fax: 202-378-2319
        brian.waagner@huschblackwell.com

        *Counsel for Plaintiff Automotive Finance Corporation*